**PELTON & ASSOCIATES, PC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DELROY HENRY and ALONSO BANOS, Individually and on Behalf of all other Employees Similarly Situated,** | **ECF Case** |
| **Plaintiffs,** | |
| **-against-** | **12-cv-3996 (CM)** |
| **LITTLE MINT, INC. d/b/a DISHES, MINI MINT, INC. d/b/a DISHES, MOSHE MALLUL, MAGGIE TALISMAN and JOHN DOES #1-10, Jointly and Severally,** | |
| **Defendants.** | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
### MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF THE CASE.............................................................................................1

STATEMENT OF FACTS ...................................................................................................2

      1.  Defendants' Stores, Management, and Employees ................................................3

      2.  Defendants' Pay Policies for Hourly Employees....................................................4

ARGUMENT .......................................................................................................................6

I.     THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER
      PLAINTIFFS' STATE LAW CLAIMS ....................................................................6

II.    THIS COURT SHOULD CERTIFY PLAINTIFFS' NYLL CLAIMS AS A RULE
      23(B)(3) CLASS ACTION CLAIMS .......................................................................7

      A.  Rule 23(a)(1): Numerosity .........................................................................9

      B.  Rule 23(a)(2): Common Questions..............................................................9

      C.  Rule 23(a)(3): Typicality ..........................................................................11

      D.  Rule 23(a)(4): Adequacy of Representation ..............................................12

      E.  Rule 23(b)(3): Common Questions Predominate .....................................13

      F.  Rule 23(b)(3): Superiority.........................................................................15

IV.   PLAINTIFFS' PROPOSED CLASS NOTICE .......................................................18

V.    INFORMATION TO BE PROVIDED BY DEFENDANTS TO FACILITATE
      NOTICE ..................................................................................................................18

CONCLUSION..................................................................................................................19

# TABLE OF AUTHORITIES

**Page**

CASES

Adames v. Mitsubishi Bank, Ltd.,
    133 F.R.D. 82 (E.D.N.Y. 1989) ........................................................................7, 8

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997) ........................................................................13

Ansoumana v. Gristede's Operating Corp.,
    201 F.R.D. 81 (S.D.N.Y. 2001) ........................................................................16

Aponte v. Comprehensive Health Management, Inc.,
    2011 U.S. Dist. LEXIS 60882 (S.D.N.Y. June 1, 2011) ........................................14

Campos v. Goode,
    2011 U.S. Dist. LEXIS 22959 (S.D.N.Y. Mar. 4, 2011) ........................................13

Caridad v. Metro-North Commuter Railroad,
    191 F.3d 283 (2d Cir.1999)........................................................................7, 8, 11

Consol. Rail Corp. v. Town of Hyde Park,
    47 F.3d 473 (2d Cir.1995)........................................................................8

Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,
    502 F.3d 91 (2d Cir. 2007)........................................................................12

Cruz v. Hook-SupeRx, L.L.C.,
    2010 U.S. Dist. LEXIS 81021 (S.D.N.Y. Aug. 5, 2010)........................................17

Delaney v. Geisha NYC, LLC,
    261 F.R.D. 55 (S.D.N.Y.2009) ........................................................................19

Dziennik v. Sealift, Inc.,
    2007 WL 1580080 (E.D.N.Y. May 29, 2007) ........................................................8

E.g. D'Alauro v. GC Services Ltd. Partnership,
    168 F.R.D. 451, 456 (E.D.N.Y. 1996) ........................................................................10

E.g. Noble v. 93 University Place Corp.,
    224 F.R.D. 330, 343 (S.D.N.Y. 2004) ........................................................................10

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156, 165 (1974)........................................................................8

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ..................................................................13

*Gortat v. Capala Bros.*,
    2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010) ...........................................8

*Guzman v. VLM, Inc.*,
    2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. Mar. 2, 2008) ........................................16

*Hirschfeld v. Stone*,
    193 F.R.D. 175 (S.D.N.Y. 2000) ....................................................................8

*In re Deloitte & Touche, LLP Overtime Litigation*,
    2012 WL 340114 (S.D.N.Y. Jan. 17, 2012) .....................................................18

*In re Industrial Diamonds Antitrust Litigation*,
    167 F.R.D. 374 (S.D.N.Y. 1996) ....................................................................7

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006).....................................................................13, 15

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa U.S.A. Inc.*,
    280 F.3d 124 (2d Cir. 2001).................................................................13, 15, 18

*Jacob v. Duane Reade, Inc.*,
    2012 WL 260230 (S.D.N.Y. Jan. 27, 2012) ....................................................18

*Jankowski v. Castaldi*,
    2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 11, 2006) ...................................12, 15

*Jermyn v. Best Buy Stores, L.P.*,
    2010 U.S. Dist. LEXIS 130682 (S.D.N.Y. Dec. 6, 2010) ......................................18

*Johnson v. Brennan*,
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)....................................13

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) ..................................................................11

*Lewis v. Alert Ambulette Service Corp.*,
    No. 11 Civ. 442 (JBW), 2012 U.S. Dist. LEXIS 6269 (E.D.N.Y. Jan. 19, 2012) ................14

*Li v. Lin*,
    2011 WL 2848417 (S.D.N.Y. July 18, 2011) ....................................................19

*MMT Sales, Inc. v. Channel 53 Inc.*,
   1993 U.S. Dist. LEXIS 18208 (S.D.N.Y. Dec. 27, 1993) ......................................................6

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...............................................................................................11, 12

*Mascol v. E&L Transp., Inc.*,
   2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. June 29, 2005) ....................................................14

*Moore v. Paine Webber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)..............................................................................................11

*Morangelli v. Chemed Corp.*,
   275 F.R.D. 99 (E.D.N.Y. 2011) .........................................................................................10

*Myers v. Hertz Corp.*,
   2007 U.S. Dist. LEXIS 53572 (E.D.N.Y. July 24, 2007) ....................................................11

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ...................................................................................10, 17

*Olsen v. New York Cmty. Bancorp*,
   233 F.R.D. 101 (E.D.N.Y. 2005) .......................................................................................12

*Pippins v. KPMG, LLP*,
   2012 WL 19379 (S.D.N.Y. Jan 3, 2012)  ...........................................................................19

*Promisel v. First American Artificial Flowers Inc.*,
   943 F.2d 251 (2d Cir. 1991).................................................................................................6

*Raniere v. Citigroup Inc.*,
   2011 WL 5881926 (S.D.N.Y. Nov. 22, 2011) .....................................................................19

*Shariff v. Goord*,
   235 F.R.D. 563 (W.D.N.Y. 2006)....................................................................................9, 12

*Shabazz v. Morgan Funding Corp.*,
   269 F.R.D. 245 (S.D.N.Y. 2010) .......................................................................................15

*Shahriar v. Smith & Wollensky Restaurant Group, Inc.*,
   659 F.3d 234 (2d Cir. 2011)................................................................................... *passim*

*Toure v. Cent. Parking Sys.*,
   2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007)...................................................13

*Trinidad v. Breakaway Courier Systems, Inc.,*
    2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ...........................................................................8

*United Mine Workers v. Gibbs,*
    383 U.S. 715 (1966)...................................................................................................................6

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S.Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ....................................................................9

*Willix v. Healthfirst, Inc.,*
    2009 U.S. Dist. LEXIS 114818 (E.D.N.Y. Dec. 3, 2009) ......................................................18

*Woe v. Cuomo,*
    729 F.2d 96 (2d Cir. 1984).........................................................................................................8

STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1367 ...............................................................................................................................6

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................................. *passim*

## PRELIMINARY STATEMENT

Named Plaintiffs Delroy Henry and Alonso Banos (collectively, the "Plaintiffs" or the "Named Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order:

(1)    certifying Plaintiffs' New York Labor Law ("NYLL") unpaid overtime and spread of hours claims (Counts II & III) as a Rule 23(b)(3) class action on behalf of a class defined as "all counter servers, kitchen staff, cashiers, delivery persons and other hourly employees who are or were employed by Dishes at any of the four (4) Dishes locations at any time from May 21, 2006 through the present" (the "Class");

(2)    appointing Plaintiffs as class representatives for the Class and counsel for Plaintiffs as Class counsel;

(3)    approving the class notice attached to the declaration of Brent E. Pelton as Ex. H;

(4)    directing Defendants to furnish to Plaintiffs in electronically readable form the names, last known addresses, telephone numbers (including cell phone numbers) and emails of all members of the Class so that Plaintiffs can issue class notice. Plaintiffs further request that Defendants be required to provide social security numbers for any Class member whose notice is undeliverable.

For the reasons set forth below, Plaintiffs' motion should be granted in its entirety.

## STATEMENT OF THE CASE

This Fair Labor Standards Act (FLSA) collective action and NYLL class action was commenced on May 21, 2012. Dkt. 1. An Amended Complaint was filed on July 20, 2012. Dkt. 15. Defendants are corporate entities that own Dishes restaurants in Manhattan and that are alleged to operate together with other corporate entities (sued as John Does #1-10) as a single integrated enterprise, referred to herein as the "Dishes Enterprise" or "Dishes." *Id.* at ¶¶ 10, 25.

Defendants Mallul and Talisman are alleged to be officers, directors and/or managing agents of the Dishes Enterprise responsible for the unlawful policies and practices challenged in the complaint and have been employers of all members of the Class. *Id.* at ¶¶ 9, 26.

Plaintiff Henry was employed by the Dishes Enterprise between April 2002 and May 2012 as a counter helper and cashier.  *Id.* at ¶ 28.  Plaintiff Banos was employed by the Dishes Enterprise as a kitchen staff employee from January or February 2008 through June 2008 and again between March 2009 and March 2010. *Id.* at ¶ 38.

In the Amended Complaint, Plaintiffs allege, *inter alia*, that Defendants violated their rights and the rights of the Class under the FLSA and NYLL by:

1. Paying "straight time" for all hours worked in excess of forty (40) per week, rather than paying the overtime premium for all such hours (the "Overtime Claim").

The Plaintiffs also allege that Defendants further violated the NYLL regulations by:

2. Failing to pay an additional hour at minimum wage for each hour in which Plaintiffs and the Class worked in excess of ten (10) hours in one day (the "Spread of Hours Claim").

## STATEMENT OF FACTS

As demonstrated by (i) Plaintiffs' motion for conditional certification of an FLSA class, Dkt. 13 (which is incorporated herein by reference along with the evidence submitted in support of that motion); (ii) Defendants' document production; (iii) the parties' deposition testimony; and (iv) the pleadings, Plaintiffs and all Dishes' other counter helpers, kitchen staff, cashiers, delivery persons and other hourly employees were paid pursuant to the same corporate policy no matter which position they held or location in which they worked.  As set forth in detail below, this evidence is more than sufficient to establish that Rule 23(b)(3) certification is warranted. *See Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) ("In deciding a motion for class certification under Rule 23, 'the district judge must receive enough

2

evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.'") (quoting *In re IPO Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)).

### 1. Defendants' Restaurants, Management, and Employees

The Dishes Enterprise operates four (4) Dishes locations in New York City. Ex. B,[1] Deposition of Moshe Mallul ("Mallul Depo.") at 6; Ex. C, Deposition of Maggie Talisman ("Talisman Depo.") at 5. All locations are centrally operated from a corporate office located on the eighth floor of the 6 East 45th Street Dishes restaurant. Ex. B at 26. This central office is strategically placed within a ten minute walk from each of the three other Dishes locations in order for the general managers and owners to easily oversee and access all locations. *Id*. at 27.

Defendant Mallul is the managing partner of the Dishes Enterprise, whereby he oversees the entire operation, except for the food-related aspects, which are overseen by Defendant Talisman. *Id.* at 26; Ex. C, Talisman Depo. at 6. Each Dishes location has a desk for Defendant Mallul. Ex. B, Mallul Depo. at 27-28. Both Mallul and Talisman are owners of all four (4) locations of the Dishes Enterprise. Ex. B, Mallul Depo. at 6; Ex. C, Talisman Depo. at 5.

At any given time, the Dishes Enterprise employs between approximately 120 and 140 hourly employees across its four locations. *Id.* at 62. These hourly employees work in various non-management positions, including: station supervisors, counter attendants, juice bar attendants, sandwich makers, cooks, prep cooks, baristas, bakers, assistant bakers, cashiers and runners. *Id*. at 18-19. As set forth below, all Dishes' hourly employees were subjected to the same pay policies.

### 2. Defendants' Pay Policies for Hourly Employees

---

[1]   Unless otherwise provided, all exhibits referenced herein are attached to the Declaration of Brent E. Pelton, Esq., submitted contemporaneously herewith.

Every hourly employee in each Dishes location was paid in the same manner, pursuant to the Dishes Enterprise's payment practices that have been in place for approximately the past six (6) years. Ex. B, Mallul Depo. at 37-38, 61-62.  Dishes paid these employees on a bi-weekly basis through a combination of check and cash.  *Id.* at 37; *see* Exs. D - G (excepts from payroll records).  Plaintiffs allege that, in violation of the overtime requirements, Defendants had a policy of paying their hourly employees at the same hourly rate for all hours worked, including those worked in excess of forty (40) in a given workweek. Dkt. 15 ¶¶ 35-36, 42.  Plaintiffs further allege that, notwithstanding the fact that they worked shifts in excess of ten hours, they did not receive spread of hours payments for such shifts. *Id.* at ¶ 44.

There is ample evidence to support these allegations.  For example, Defendants' payroll records for "Dishes Grand Central" (Little Mint, Inc.) prior to November 7, 2010 and "Dishes on Park" (Mini Mint, Inc.) prior to May 9, 2010,[2] demonstrate on their face that Plaintiffs and the members of the Class were paid at their regular hourly rate for all hours worked. *See* Exs. D, F (payroll records before accounting change).  If you simply multiply the employees' hourly rate by their number of hours worked, this equals the amount of total compensation they received for the pay period. *See Id.*  Taking Plaintiff Henry as an example (listed as employee #5), during the pay period 10/25/10 – 11/07/10, Henry worked 108 hours at an hourly rate of $14.00 per hour, and was paid $1,120.00 by check and $392.00 by cash, for a total of $1,512.00 (108*14 = 1,512). Ex. D.

Thereafter, during a six month period following a Department of Labor investigation, Defendants changed their payroll accounting records for each of their locations. Ex. B, Mallul

---

[2] To date, Defendants have only provided payroll records for two Dishes locations, 399 Park and Grand Central, dating back from mid-2009 to present.  Even without the actual pay records for the remainder of the class period, Defendants admit they had the same pay structure for all four locations and the same pay practices for the past six (6) years.

Depo. at 31-32.  Despite the change in records however, the Defendants did not change their pay policy. *Id.* at 31.  The records after the accounting change still show, on their face, that if you add up all of the compensation received by an hourly employee in the pay period and divide it by their hours worked, they are being paid at the same hourly rate for all hours. *See* Exs. E, G (payroll records post-accounting change).  Again using Plaintiff Henry as an example, during the pay period 11/08/10 – 11/21/10, which is the very next pay period to the one described above, according to the records, Henry's hourly rate was reduced by $3.50 per hour to a rate of $10.50.  Ex. E.  Henry was never paid this stated $10.50 per hour. *See* Ex. A, Henry Depo. at 46.  In reality, the records show that Henry worked 110 hours and was paid $1,312.50 by check and $227.50 in cash, for a total of $1,540.00. *Id.*  If you divide Henry's total compensation of $1,540.00 by the number of hours he worked during that pay period (110), this equals $14.00, which is his *true* hourly/regular rate. *Id.*

Another example, using the payroll records from the "Dishes on Park" location, demonstrates that the records include hourly rates that are below the employees' actual hourly rate in an attempt to conceal their overtime violations.  It is easiest to determine an employees' *true* hourly rate when looking at a pay period where the employee did not work any overtime.  For example, Carlos Dutan Yauri (listed as employee #10), during the pay period 4/26/10 – 5/9/10, worked 76.5 hours and received total compensation of $765.00 ($573.75 by check plus 191.25 in cash), which equals to an hourly rate of $10. Ex. F.  The payroll records provide however, that Mr. Yauri's hourly rate was $7.50. *Id.*  Simple math does not support such a low hourly rate.  The following pay period, 5/10/10 – 5/23/10, Mr. Yauri (again listed as employee #10) worked 102.75 hours and was paid $1,027.50 ($855.00 by check and $172.50 in cash). *Id.*

This confirms Mr. Yauri's *true* hourly/regular rate of $10 per hour (not $7.50 as the records indicate), and the Defendants' policy of paying straight time for all hours worked.

Further, Defendants did not pay their hourly employees an additional hour of minimum wage when they worked more than ten hours in one day. Ex. B, Mallul Depo. at 56-57; Dkt. 18 (Defendants' Answer to Amended Complaint) at ¶ 44.  The payroll records also show no spread of hours payments. *See* Exs. D - G.

Plaintiffs' allegations of unpaid overtime and spread of hours premiums are confirmed by even the incomplete pay records that Defendants have provided and, as a result, the Plaintiffs and other hourly employees are entitled to back overtime and spread of hours payments.

## ARGUMENT

## I.      THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Before turning to Plaintiffs' arguments in favor of certifying Plaintiffs' NYLL claims as a class action, it is first appropriate to address the Court's jurisdiction over those claims.  Title 28 U.S.C. § 1367 allows a district court to exercise supplemental jurisdiction over a state law claim where the claim is "so related [to the federal claims] that they form part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).  For purposes of that section, claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact," *Shahriar v. Smith & Wollensky Restaurant Group, Inc.,* 659 F.3d 234, 245 (2d Cir. 2011), and "would ordinarily be tried in one judicial proceeding." *MMT Sales, Inc. v. Channel 53 Inc.,* 1993 U.S. Dist. LEXIS 18208, at *4 (S.D.N.Y. Dec. 27, 1993) (*quoting Promisel v. First American Artificial Flowers Inc.,* 943 F.2d 251, 254 (2d Cir. 1991)).  District courts generally exercise discretion in favor of supplemental jurisdiction where "considerations of judicial economy, convenience and fairness to litigants" weigh in favor of

hearing the state law claims at the same time as the federal law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966).

Here, Plaintiffs' NYLL overtime claim challenges the very same policy and practice as their federal FLSA claim – Defendants' practice of failing to pay overtime premiums for hours worked in excess of forty (40) in a given workweek. The two claims are identical in every respect except the applicable statute of limitations and they clearly form part of the same case or controversy. Likewise, Plaintiffs' spread of hours claim does not raise a "novel or complex issue of [s]tate law." *Smith & Wollensky,* 659 F.3d at 246. "Rather, the spread of hours claim will likely hinge on factual findings of (1) whether class members had workdays lasting more than ten hours and (2) whether [defendants] paid class members an extra hour's pay at the New York minimum wage when their workdays lasted more than ten hours." *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 (2010)). Both of Plaintiffs' claims can be easily proven based on the records of hours worked and wages received by Plaintiffs' and the Class.

Considerations of judicial economy, convenience and fairness to litigants counsel in favor of trying both claims that turn on the legality of Defendants' challenged compensation policies, FLSA and NYLL, in one action. In these circumstances, exercise of supplemental jurisdiction over the NYLL claims is appropriate. *Id.* at 245 (approving widespread practice in FLSA claims of exercising supplemental jurisdiction over parallel NYLL claims).

## II.     THIS COURT SHOULD CERTIFY PLAINTIFF'S NYLL CLAIMS AS A RULE 23(B)(3) CLASS ACTION

A party seeking class certification has the burden of demonstrating that Rule 23's requirements are satisfied. *Caridad v. Metro-North Commuter Railroad,* 191 F.3d 283, 291 (2d Cir. 1999) (citation omitted), *cert. denied,* 529 U.S. 1107 (2000). However, Rule 23 should be given a "broad, rather than a restrictive interpretation," *Adames v. Mitsubishi Bank, Ltd.,* 133

F.R.D. 82, 88 (E.D.N.Y. 1989), and courts should resolve doubts about whether Rule 23 has been satisfied in favor of certification. *In re Industrial Diamonds Antitrust Litigation,* 167 F.R.D. 374, 378 (S.D.N.Y.1996). "It is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trials." *Adames*, 133 F.R.D. at 88 (citing *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir. 1984)).

When considering a motion for class certification, the court must accept the allegations in the complaint as true. *Dziennik v. Sealift, Inc.,* 2007 WL 1580080, at *3 (E.D.N.Y. May 29, 2007); *Hirschfeld v. Stone,* 193 F.R.D. 175, 182 (S.D.N.Y. 2000).   In addition, courts generally must "delve deeper" in order to establish the evidentiary record necessary to make a reasoned class certification decision. *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009). Courts may rely on initial discovery conducted by the parties to establish such a record. *Id*. Declarations submitted by the parties can also be considered. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 165 (1974).  However, the Court may not examine the merits of the case. *Caridad,* 191 F.3d at 291.

Plaintiffs seek to certify their New York Labor Law claims for all four (4) Dishes locations on behalf of all counter servers, kitchen staff, cashiers, delivery persons and other hourly employees who are or were employed at any time during the six year NYLL statutory period.  As demonstrated by the facts above and as set forth below, this class easily satisfies the requirements of rule 23(a) and (b)(3).

## A.  Rule 23(a)(1): Numerosity

8

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) *cert. denied,* 515 U.S. 1122 (1995); *see also Trinidad v. Breakaway Courier Systems, Inc.,* 2007 WL 103073, at *4 (S.D.N.Y. Jan. 12, 2007) ("While there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment."). A plaintiff need not establish the precise number of class members in order to satisfy the numerosity requirement. *Shariff v. Goord,* 235 F.R.D. 563, 570 (W.D.N.Y. 2006).

Here, the Class easily meets this standard as there are more than 120 counter servers, kitchen staff, cashiers, delivery persons and other hourly employees employed by Defendants at any one time. Given the NYLL's six year statutory period and the high employee turnover, the potential class no doubt numbers in the several hundreds. Therefore, the numerosity requirement is satisfied.

### B. Rule 23(a)(2): Common Questions

In order for certification to be proper, class claims must "depend upon a common contention ... of such a nature that it is capable of class wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

"Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Garcia v. Pancho Villa's of Huntington Village, Inc.,* 281 F.R.D. 100, 105 (E.D.N.Y. 2011) (quoting *Damassia*, 250 F.R.D. at 156). Even a single common question is sufficient to meet the commonality requirement. *Wal-mart Stores, Inc*., 131 S.Ct. at

2556.  The need for an individualized determination of damages generally does not defeat the requirement. *E.g. Garcia*, 281 F.R.D. at 106.  Where the question of law involves "standardized conduct of the defendant... [to the plaintiff], a common nucleus of operative fact is typically presented and the commonality requirement... is usually met." *E.g. D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).

In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices. *E.g. Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("All potential class members are alleged to have been harmed by a common practice—defendants' failure to adequately compensate employees for overtime hours. The legal theory set forth in Noble's Complaint is common to all class members—that this alleged failure to pay overtime violates New York's labor law. Accordingly, the commonality requirement is satisfied.").

Plaintiffs' class clearly meets this standard.  Plaintiffs' claims raise several common questions of law and fact that are susceptible to common answers, including: (1) whether Defendants had a policy of not paying counter helpers, kitchen staff, cashiers, delivery persons and other hourly employees overtime premium pay for hours worked over 40 in a workweek; and (2) whether Defendants had a policy of not paying counter helpers, kitchen staff, cashiers, delivery persons and other hourly employees spread of hours pay for each day's labor with a spread of hours greater than ten.  Thus, the class more than satisfies the common question requirement.  *See Smith & Wollensky*, 659 F.3d at 252 (upholding combined FLSA/NYLL class action and finding common questions satisfied where all NYLL claims derived from the same policy of defendants).

The extent of the common questions presented by the class will be addressed in more detail in the discussion of Rule 23(b)(3) "predominance" inquiry.  *See Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 106 (E.D.N.Y. 2011) (combining 23(a)(2) commonality and 23(b)(3) predominance requirements into one analysis); *see also Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

### C.  Rule 23(a)(3): Typicality

"Typicality requires that 'the claims of the class representatives be typical of those of the class, and is therefore satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendants' liability.'"  *Myers v. Hertz Corp.*, No. 02 Civ. 4325 (BMC)(MLO), 2007 U.S. Dist. LEXIS 53572, at *18 (E.D.N.Y. July 24, 2007) (*quoting Marisol A.*, 126 F.3d at 376).  However, "[t]ypicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claims as to that of other members of the proposed class.'" *Damassia*, 250 F.R.D. at 158 (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)) (additional citation omitted).

Here, the Plaintiffs and the prospective class "were subject to the same general employment scheme," *Lee*, 236 F.R.D. at 204, and their claims are all based on "the same course of events and legal theory." *Damassia*, 250 F.R.D. at 158.  The Plaintiffs' claim that Defendants unlawfully failed to pay them overtime and spread of hours pay while they employed as counter helpers, kitchen staff, cashiers, delivery persons and other hourly employees arises from the same company-wide policy as the other counter helpers, kitchen staff, cashiers, delivery persons and other hourly employees who compose the class.  This is especially true given Defendants'

11

common payroll recordkeeping methods throughout their enterprise and their admissions regarding their nearly identical pay practices for all hourly employees in all their restaurant locations.  Where Defendants treated the members of the Class in the same manner with respect to their pay, hearing the Plaintiffs' claims on a class-wide basis is appropriate.  "Even if some class members' facts are somewhat different than [the Plaintiffs'] the claims are similar enough to meet the typicality element." *Lee*, 236 F.R.D. at 204; *see also Robidoux*, 987 F.2d at 936-37 (noting that the "typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims").  Thus, Plaintiffs' claims are typical of the claims of the class they seek to represent.

### D.  Rule 23(a)(4): Adequacy of Representation

The modern understanding of the Rule 23(a)(4) adequacy requirement is twofold.  First, the class representative must "be part of the class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents," *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007), and there must be "no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Shariff*, 235 F.R.D. at 572 (*quoting Marisol A.,* 126 F.3d at 378).  Second, class counsel must be qualified.  *Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237, at *10-11 (E.D.N.Y. Jan. 11, 2006) (*quoting Olsen v. New York Cmty. Bancorp*, 233 F.R.D. 101, 109 (E.D.N.Y. 2005)).

Here, the Plaintiffs are clearly members of the class and have the same interests as the rest of class members.  Both the Plaintiffs and the class members suffered the same injury from that policy – loss of overtime and spread of hours pay to which they were legally entitled.  There are no conflicts between Plaintiffs and the class that would preclude them from vigorously representing the calss members.  Any defenses to Plaintiffs' legal arguments for overtime and

spread of hours reimbursements as counter helpers, kitchen staff, cashiers, delivery persons and other hourly employees would be common to all class members because they were all paid pursuant to the same policy.  Plaintiffs understand their duties as class representatives and will be able to adequately represent the interests of all class members in this action.  *See* Ex. A, Henry Depo. at 80.

In addition, as set forth above and in the enclosed affidavit of Brent E. Pelton, class counsel is experienced in handling large, multi-party actions and fully qualified to pursue this action.   Therefore, both prongs of the adequacy inquiry – qualification of the class representatives and qualification of class counsel – are easily met.

### E.  Rule 23(b)(3):  Common Questions Predominate

The requirement that common questions predominate tests whether the proposed classes "are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  Predominance is satisfied when "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore*, 306 F.3d at 1252; *see also In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006).  When potential class members are "aggrieved by a single policy of the defendants," that is "precisely the type of situation for which the class action device is suited."  *In re Nassau County Strip Search Cases*, 461 F.3d at 228 (*quoting In re Visa Check/Mastermoney Antitrust Litig. v. Visa U.S.A. Inc.*, 280 F.3d 124, 146 (2d Cir. 2001)).  Indeed, a single illegal policy paired with a legal theory common to all victims of that policy satisfies the predominance requirement.  *Smith & Wollensky*, 659 F.3d at 253 (challenge to tip policy satisfies predominance requirement); *Johnson v. Brennan*, 2011 U.S.

Dist. LEXIS 105775, at *18 (S.D.N.Y. Sept. 16, 2011) (illegal tip pool); *Campos v. Goode*, 2011

U.S. Dist. LEXIS 22959, at *7-8 (S.D.N.Y. Mar. 4, 2011) (failure to pay overtime); *Toure v.*

*Cent. Parking Sys.*, 2007 U.S. Dist. LEXIS 74056, at *22 (S.D.N.Y. Sept. 28, 2007) (same);

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179 (W.D.N.Y. 2005) (same).

That is precisely the situation here.  Plaintiffs allege that they and the members of the

proposed NYLL class were all aggrieved by the same policy of Defendants to not pay overtime

or spread of hours premiums.  The method of calculating the employees' wages during a pay

period, the system of paying a portion of wages by check and another portion by cash and the

reasoning behind Defendants' alleged reduction of the hourly employees' hourly wages are all

factual and legal issues common to the class.  They are also questions that can be proven through

generalized proof since they turn on Defendants' policies and actions and can be proven to a

large extent through payroll records.  Indeed, since Defendants acknowledge that they paid all

hourly employees in the same manner throughout their enterprise, an analysis of the pay practice

towards one class member would determine liability for the entire class.  Because common

questions predominate, challenges to pay practices that violate the NYLL are routinely certified

as Rule 23 class actions. *See e.g., Lewis v. Alert Ambulette Service Corp.*, No. 11 Civ. 442

(JBW), 2012 U.S. Dist. LEXIS 6269 (E.D.N.Y. Jan. 19, 2012) (certifying joint FLSA/NYLL

Rule 23 class action for unpaid overtime, minimum wage, spread of hours and deductions

claims);  *Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825 (PKC), 2011

U.S. Dist. LEXIS 60882 (S.D.N.Y. June 1, 2011) (certifying joint FLSA/NYLL Rule 23 class

action for unpaid overtime claims); *Mascol v. E&L Transp., Inc.*, No. 03 Civ. 3343 (CPS), 2005

U.S. Dist. LEXIS 32634 (E.D.N.Y. June 29, 2005) (same).

Even the calculation of damages for the NYLL Class can be resolved on a class-wide basis using Defendants' payroll records. Plaintiffs do not dispute the number of hours worked per pay period or their hourly rates (prior to the accounting change); they only dispute that after the Defendants changed their payroll accounting, that their hourly rates did not change, despite what the pay records may indicate. Because each class members' hours worked and total compensation received appear on the records, if the Defendants' policy is found to violate the overtime and spread of hours requirements, the amount owed for hours worked over forty each week and for working more than ten hours in a day can easily be calculated from the records themselves, without the necessity of individual testimony.

Even if damages required individual testimony, which they do not, "it is well-settled that individualized damages calculations do not defeat predominance." *Johnson*, 2011 U.S. Dist. LEXIS 105775, at *18; *see also Smith & Wollensky*, 659 F.3d at 253 (*citing In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d at 139). Indeed, a class action based on unpaid wages "will necessarily involve calculations for determining individual class member damages, and the need for such calculations do not preclude class certification." *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250-51 (S.D.N.Y. 2010). It is well-settled that the court is authorized to grant class status as to liability only, should the court deem that the most reasonable approach. *In re Nassau County Strip Search Cases*, 461 F.3d at 226-27.

### F. Rule 23(b)(3): Superiority

Rule 23(b)(3) sets out four factors bearing on the question of superiority: (1) the extent to which the class members have an interest in individually controlling the prosecution of their claims; (2) the extent and nature of any litigation concerning the controversy already begun by class members; (3) the desirability of concentrating the litigation in one forum; and (4) the likely

difficulties in managing the class action.  All four of these factors counsel in favor of certifying the Class.

(1) The class members have no interest in individually controlling the prosecution of their claims.  In most cases, the amount of damages at issue is not large enough to make individual actions feasible.  *Jankowski v. Castaldi*, 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006). Pursuing individual actions may also be difficult for the class members because many of them are immigrants who may lack familiarity with the American legal system.  *Id.* at *4.  Also, since many of the putative class members are current employees of Defendants, a determination of superiority is warranted due to the "*possibility* that employees would be dissuaded from pursuing individual claims by fear of reprisal." *Guzman v. VLM, Inc.*, 2008 U.S. Dist. LEXIS 15821, at *25 (E.D.N.Y. Mar. 2, 2008) (emphasis added); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85-86 (S.D.N.Y. 1981) (lack of financial resources and fear of retaliation "suggest that individual suits as an alternative to a class action are not practicable," thereby making a class a superior method for adjudicating wage and hour litigation).

(2) A search on PACER reveals no pending FLSA claims against Defendants and Plaintiffs are aware of no such cases.  As a result, litigating the common issues raised by this case on behalf of the two classes will achieve the judicial economy that Rule 23 was designed to promote.

(3) Given that the evidence necessary to establish liability (i.e., Defendants' payroll records) is the same whether this action is tried as an individual action or a class action, it is clearly desirable from the standpoint of efficiency and judicial economy to concentrate all of the claims in one forum.  Certainly, class adjudication is far superior to the filing of dozens if not hundreds of separate actions all raising the same questions and offering the same evidence

regarding the nature and legality of Defendants' pay policy.  The superiority of class treatment is particularly great here because the claims of the class members all arise in the Southern District of New York.  As a result class treatment will avoid the filing of dozens of identical claims in the same court and conversely will not result in this court adjudicating claims that could have been filed in a different jurisdiction.

(4) Courts in the Second Circuit have made clear that there are no manageability problems inherent in certifying NYLL Rule 23 classes in conjunction with an FLSA collective action.  *See, e.g., Smith & Wollensky*, 659 F.3d at 244; *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 334 (S.D.N.Y. 2004); *Guzman*, 2008 U.S. Dist. LEXIS 15821, at *28-29.  *Shahriar v. Smith & Wollensky,* 659 F.3d 234, is particularly instructive in this regard.  In that case, the Second Circuit affirmed class certification of a combined FLSA/NYLL challenge to an employer's tip practices.  The Court was emphatic that "the 'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline [supplemental] jurisdiction" over the NYLL claim, *id.* at 248, and it is no more valid a reason for declining to certify the NYLL claim as a class action.  *Id*.  From a manageability perspective, class actions relying on a single state's law are particularly well-suited to class treatment.  *See, e.g., Jankowski*, 2006 U.S. Dist. LEXIS 4237, at *27.  Indeed, many courts have certified cases even when multiple states' laws are at issue.  *See, e.g., Morangelli*, 275 F.R.D. at 118; *Cruz v. Hook-SuperRx, L.L.C.*, 2010 U.S. Dist. LEXIS 81021, at *13-14 (S.D.N.Y. Aug. 5, 2010) (collecting cases).

There are even fewer issues of manageability in this case than in the ordinary FLSA/NYLL case because in this case the evidence needed to prove the claims (Defendants' payroll records) will be the same for all class members.  Thus granting class certification in no

way adds to the manageability issues in this litigation; it does not materially change the evidence that will be adduced, the witnesses who will be called, or the legal questions to be decided. Damages can be readily proven from Defendants' records, making even the damages portion of the case manageable.

Finally, denying class certification on manageability grounds is "disfavored" in this Circuit and "should be the exception rather than the rule." *Willix v. Healthfirst, Inc.*, 2009 U.S. Dist. LEXIS 114818, at *13 (E.D.N.Y. Dec. 3, 2009) (*quoting In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotations omitted)). Accordingly, a class action is a superior method of adjudicating this case.

The members of the Class are also easily identifiable from Dishes' records and concentrated in the New York City region, further contributing to the manageability of the claim.

## III.   PLAINTIFFS' PROPOSED CLASS NOTICE

Attached to the Pelton Decl. as Ex. H is a proposed class notice informing the class members of their right to opt out of the NYLL Rule 23 class action. This notice is based on the notice proposed by the plaintiff and adopted by this Court in *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 00214 (CM), 2010 U.S. Dist. LEXIS 130682 (S.D.N.Y. Dec. 6, 2010). Plaintiff has changed the names and description of the claims and simplified some of the language, but otherwise tracked the substance of that approved long-form notice.

## IV.   INFORMATION TO BE PROVIDED BY DEFENDANTS TO FACILITATE NOTICE

Plaintiff asks the Court to order Defendants to provide Plaintiffs, in electronically readable form, the last known address, telephone numbers (including cell phone numbers), and e-mail addresses of Class members who worked for Defendants at any time from May 21, 2006 through the present, in order to assist with the issuance of notice. Plaintiffs also request that a

social security number be provided for any class member whose notice is undeliverable. The Southern District of New York routinely orders production of this information in FLSA collective actions. *See Jacob v. Duane Reade, Inc.,* 2012 WL 260230, at *9 (S.D.N.Y. Jan. 27, 2012) (addresses and telephone numbers); *Diaz,* 2012 WL 137460, at *9 (same); *In re Deloitte & Touche, LLP Overtime Litigation,* 2012 WL 340114, at *1 (S.D.N.Y. Jan. 17, 2012) (addresses, telephone numbers and e-mails); *Pippins v. KPMG, LLP,* 2012 WL 19379, at *13 (S.D.N.Y. Jan 3, 2012) (addresses and telephone numbers, as well as emails and social security numbers for class members whose notices are returned); *Delaney v. Geisha NYC, LLC,* 261 F.R.D. 55, 60 (S.D.N.Y.2009) ("names, last known mailing address, alternate address (if any), all known telephone numbers, social security numbers, and dates of employment"); *Raniere v. Citigroup Inc.,* 2011 WL 5881926, at *29–30 (S.D.N.Y. Nov.22, 2011) (names, last known addresses, telephone numbers (both home and mobile), and e-mail addresses); *Li v. Lin,* 2011 WL 2848417, at *2-3 (S.D.N.Y. July 18, 2011) (names and addresses of potential opt-in plaintiffs, and permitting renewal of an application for social security numbers if large number of notices are returned).

## CONCLUSION

For all of the foregoing reasons, this Court should issue an order that: (i)  certifies Plaintiffs' New York Labor Law ("NYLL") unpaid overtime and spread of hours claims (Counts II & III) as a Rule 23(b)(3) class action on behalf of a class defined as "all counter servers, kitchen staff, cashiers, delivery persons and other hourly employees who are or were employed by Dishes at any time from May 21, 2006 through the present" (the "Class"); (ii) appoints Plaintiffs as class representatives for the Class and appoints counsel for the Plaintiffs' as Class counsel; (iii) approves the class Notice attached to the declaration of Brent E. Pelton as Ex. H;

and (iv) directs Defendants to furnish to Plaintiffs in electronically readable form the names, last known addresses, telephone numbers (including cell phone numbers) and emails of all members of the defined class so that Plaintiffs can issue class notice.   Plaintiffs further request that Defendants be required to provide social security numbers for any class member whose notice is undeliverable.

Dated: New York, New York
October 5, 2012

PELTON & ASSOCIATES PC


By: ___/s/Brent E. Pelton_____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 901
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, Individually and On Behalf Of All Others Similarly Situated*