UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

DELROY HENRY and ALONSO BANOS,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiffs,

      -against-

LITTLE MINT, INC. d/b/a DISHES, MINI
MINT, INC. d/b/a DISHES, MOSHE MALLUL,
MAGGIE TALISMAN and JOHN DOES #1-10,
Jointly and Severally,

        Defendants.

———————————————————————— x

No. 12 Civ. 3996 (CM)

## DECISION AND ORDER APPROVING SETTLEMENT AND FEE AWARDS

McMahon, J:

Subject to final Court approval, the parties have settled the claims of Plaintiffs and the

class and collective against Defendants Little Mint, Inc., Mini Mint, Inc., Moshe Mallul, and

Maggie Talisman (collectively, "Dishes" or "Defendants"), for $1,162,500.00. The proposed

settlement resolves all claims in the lawsuit alleging that Dishes failed to pay its counter servers,

kitchen staff, cashiers, delivery persons and other hourly employees correctly pursuant to the

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") and the New York Labor Law

("NYLL"). On October 28, 2013, the Court preliminarily approved the Parties' proposed

settlement and authorized the issuance of Notice to Class Members. (*See* Doc. 58).

The Court hereby: (1) grants final approval of the Settlement Agreement and Release

("Settlement Agreement") attached as Exhibit A to the Declaration of Brent E. Pelton in Support

1

of Plaintiffs' Motion for Final Approval of Class Settlement ("Pelton Decl.")1; (2) approves the service payments to the Named Plaintiffs as discussed in Argument Section III infra; (3) approves an award of attorneys' fees in the amount of $386,380.25 (33.33% of the Settlement Fund after subtracting expenses) and reimbursement of litigation expenses in the amount of $3,359.24, plus reimbursement of actual settlement administration fees paid by Class Counsel in the amount of $7,985.74; (4) approves payment of settlement administration costs not paid by Class Counsel of $26,014.26 to the Settlement Administrator from the Settlement Fund; and (5) enters judgment dismissing the federal action with prejudice in accordance with the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

On May 21, 2012, Named Plaintiff Delroy Henry filed a class and collective action complaint in the United States District Court for the Southern District of New York, asserting violations of the FLSA and NYLL. (Pelton Decl. ¶ 6). Plaintiffs filed an Amended Complaint on July 20, 2012, adding Plaintiff Banos as a Named Plaintiff and including claims against Defendant Mini Mint, Inc. (Doc. 15) Plaintiff Henry worked as a counter helper and cashier, and Plaintiff Banos worked as a cook helper. (*Id.*) Named Plaintiffs alleged that they and all other similarly situated hourly employees of Dishes were often required to work in excess of forty (40) hours per week and in excess of ten (10) hours per day but did not receive overtime premiums for hours worked over forty (40) per week or spread of hours premiums for hours worked over ten (10) per day. (*Id.*)

---

[1] Unless otherwise indicated, all exhibits are attached to the Pelton Decl.

2

Defendants Little Mint, Inc., Moshe Mallul and Maggie Talisman filed their Answer on August 1, 2012, disputing the material allegations and denying any liability in the proposed class and collective actions. (Doc. 18; Pelton Decl. at ¶ 7) Defendant Mini Mint, Inc. filed its Answer on August 20, 2013. (Doc. 26) Together, Defendants asserted, among other defenses, that they had fully compensated Plaintiffs for all work performed. (*See* Docs. 18 ¶ 65; 26 ¶ 65)

On October 5, 2012, the Named Plaintiffs filed a motion for class certification of their NYLL claims pursuant to Federal Rule of Civil Procedure 23. (Doc. 28) The Court granted Plaintiffs' motion, certifying as a Rule 23(b)(3) class action the following class: all counter servers, kitchen staff, cashiers, delivery persons and other hourly employees who are or were employed by Dishes at any of the four (4) Dishes location at any time from May 21, 2006 through the present (the "Class Members"). (Doc. 36) Notice of the class action was sent to approximately 1,549 class members.

Sixteen (16) individuals opted out of the class action (the "Opt-Outs") and filed their own related action against Defendants, titled *Joshua Duah, et al. v. Little Mint, Inc., et al.*, No. 13 Civ. 1702 (CM). These Opt-Outs are not a party to the settlement for which this motion seeks preliminary approval.

## II.    Overview of Investigation and Discovery

Plaintiffs' counsel conducted extensive investigation and prosecution of the claims in this lawsuit, including, but not limited to, interviewing putative class members, reviewing and analyzing extensive work and payroll records, deposing the individual and corporate Defendants, defending the depositions of the Named Plaintiffs, drafting and filing motions for conditional certification under 29 U.S.C. § 216(b) and FRCP 23 class certification, preparing for and

3

attending two mediation sessions, and engaging in extensive settlement negotiations. (Pelton Decl. at ¶¶ 8-13)

## III. Settlement Negotiations

After Defendants filed their Answer to Plaintiffs' Amended Complaint, the parties exchanged payroll records and damages calculations for the putative class members. (*Id.* ¶ 8) After Plaintiffs obtained class certification of their NYLL claims the parties continued to engage in discussions relating to the parties' claims and defenses and the scope of liability. Thereafter, in an attempt to resolve the litigation without expending additional costs and resources on discovery and summary judgment motions, the parties agreed to try to settle the action through the assistance of a private mediator. (*Id.* at ¶ 13) To that end, the parties hired Martin F. Scheinman, Esq. to assist the parties at two mediation sessions, which were held on May 30, 2013 and June 26, 2013. (*Id.*) After several hours of negotiations during the second mediation session, the parties were able to reach an agreement on the terms and conditions of settlement, as set forth in the executed settlement agreement ("Settlement Agreement"). (Ex. B; Pelton Decl. ¶ 14) At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. (Pelton Decl. ¶ 17)

## SUMMARY OF THE SETTLEMENT TERMS

## I. The Settlement Fund

The Settlement Agreement creates a fund of $1,162,500.00 to settle this action (the "Fund"). (Ex. B (Settlement Agreement) ¶¶ 1.30, 3.1(A); Pelton Decl. ¶ 20) The Fund covers class members' awards, service payments, attorneys' fees and costs, administrative fees and costs. (Ex. B ¶¶ 3.1-3.4; Pelton Decl. ¶ 20) Defendants will also contribute an amount sufficient to cover the employer's portion of payroll taxes. (Ex. B ¶ 3.1(A)) The portion of The Fund

4

allocated to any Class Member who decides to opt-out of the Settlement will revert to Defendants (Ex. B. ¶ 3.4(F); Pelton Decl. ¶ 21)

## II.    Releases

The Settlement Agreement provides that every Class Member who does not timely opt out of the settlement will release his or her FLSA wage claims and all federal, state or local claims up asserted for the period May 21, 2006 through September 10, 2013 (Ex B ¶¶ 1.26, 2.5(E), 2.8, 4.1) Class members will also release their respective claims by cashing or depositing their settlement checks. (*Id.* ¶ 2.8(D))

## III.   Eligible Employees

The Court has certified the following Rule 23 class in this action: all counter servers, kitchen staff, cashiers, delivery persons and other hourly employees who are or were employed by Dishes at any of the four (4) Dishes locations beginning May 21, 2006. (Ex. B. ¶ 1; Doc. 36) Such employees who worked for Dishes at any time between May 21, 2006 and September 10, 2013 are eligible to participate in this settlement. (Ex. B. ¶ 1.4, 1.24, 3.4(B))

## IV.   Allocation Formula

The parties agreed that Plaintiffs may petition the Court for an award from the Settlement Fund for attorneys' fees and costs, as well as for Service Awards for the Named Plaintiffs. After these amounts, plus settlement administration costs and Defendants' share of payroll taxes have been deducted, the remaining funds (the "Net Settlement Fund") will be allocated among the Class Members. Class Members who do not opt out of the settlement will be paid pursuant to an allocation formula based on the number of hours they worked in excess of forty (40) per week ("Overtime Hours") between May 21, 2006 and September 10, 2013 (the "Class Period"), as set forth in a confidential document exchanged by the parties. (Ex. B at ¶ 3.4; Pelton Decl. ¶ 23) For

5

those Class Members who worked for Dishes as delivery persons, they will also be allocated a portion of the Net Settlement Fund based on the number of workweeks during which they were employed at Dishes as delivery persons during the Class Period. (Ex. B at ¶ 3.4; Pelton Decl. ¶ 23)

A Class Member's award will be determined by multiplying the Net Settlement Fund by a fraction that consists of the number of Overtime Hours worked by such Class Member divided by the total number of Overtime Hours worked by all Class Members during the Class Period. (Ex. B at ¶ 3.4(E); Pelton Decl. ¶ 23). For those Class Members who worked for Dishes as a delivery person, their award will also include a portion for unpaid gratuities which will be determined by multiplying the Net Settlement Fund by a fraction that consists of the number of workweeks worked by such Class Member as a delivery person divided by the total number of workweeks worked by all Class Members during the Class Period. (Ex. B at ¶ 3.4(C); Pelton Decl. ¶ 23)

All Participating Class Members will receive a minimum payment of $100.00 (the "Minimum Payment") regardless of actual hours of overtime worked or weeks of employment with Dishes. If Participating Class Members are eligible for an award larger than $100.00, they will receive the higher award instead of the Minimum Payment. (Ex. B at ¶ 3.4(B); Pelton Decl. ¶ 23)

The parties have agreed that 50% of the individual settlement payments will be treated as wages and 50% as liquidated damages. (Ex. B ¶ 3.4(H)) Defendants shall pay into the Settlement Fund a sum in addition to $1,162,500.00 sufficient to cover the employer's share of payroll taxes for the portion of settlement payments distributed as wages. (Ex. B ¶ 3.1(A)).

6

In the event that any Class Member opts-out of the settlement, the settlement amount allocated for that Class Member will revert to Defendants. (Ex. B at ¶ 3.4(F); Pelton Decl. ¶ 21)

## V.     Attorneys' Fees and Litigation Costs

Consistent with the Settlement Agreement, Plaintiffs' counsel have applied for reimbursement from the Settlement Fund for their actual litigation costs and for no more than one-third (33.33%) of the Settlement Amount to compensate them for attorneys' fees. (Ex. B at ¶ 3.2)

## VI.     Service Awards

In addition to their individualized awards under the allocation formula, the Named Plaintiffs has applied for modest service payments ("Service Awards") of up to $10,000 as Service Awards from the Settlement Fund. (Ex. B at ¶ 3.3)

## VII.     Settlement Claims Administrator

Under the Settlement Agreement, Class Counsel will retain the services of Simpluris, Inc. to act as Settlement Administrator, to which Defendants have consented. (Ex. B. ¶ 1.26) The Settlement Administrator will be responsible for the mailing of Notices to Class Members in accordance with this Court's Order, calculating the settlement checks for participating Class Members, and performing claims administration and distribution of the settlement checks to participating Class Member. (*Id.* ¶ 2.2) The Settlement Administrator's fees will be paid from the Settlement Fund. (*Id.* ¶ 3.4(A))

## VIII.     The Court's Preliminary Approval Order, Notice and Claim Administration

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (Doc. 57); the Court incorporates that into this opinion.

7

On October 28, 2013, the Court preliminarily approved the Parties' proposed settlement. (*See* Doc. 58). The Court also approved the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice") and authorized the mailing of the Notice to the Class Members. (*See id.*)

## IX. Results of Notice

On December 16, 2013, the Settlement Administrator, Simpluris, Inc., received the Court-approved Notices from Counsel. (Declaration of Danielle Behring ("Behring Decl.") ¶ 4.) The Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. (*See* Behring Decl. Ex. A.)

Counsel for Defendants provided Simpluris with a mailing list containing the name, last known address, Social Security Number, and pertinent employment information during the Class Period for the Class Members. (Behring Decl. ¶ 5.) The Class List contained data for one thousand five-hundred fifty-three (1,553) Class Members. (*Id.*) On February 25, 2014, after updating the mailing addresses through the National Change of Address Database ("NCOA"), Notices were mailed via First Class Mail to the Class Members. (*Id.* at ¶ 7.)

If a Class Member's Notice was returned by the USPS as undeliverable without a forwarding address, Simpluris performed an advanced address search ("skip trace") on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. (*Id.* at ¶ 9.) Ultimately, two hundred ninety seven (297) Notices were undeliverable because Simpluris was unable to locate a current address. (*Id.*)

The response to the Notices has been overwhelmingly positive. None of the Class

Members submitted a Request for Exclusion and no Class Member objected to the Settlement.

(*Id.* at ¶¶ 10, 11.)

## SETTLEMENT TERMS

The terms of the Settlement Agreement, which were preliminarily approved by the Court

October 28, 2013 (*see* Doc. 58), and have not changed since that date, are summarized in

Plaintiff's Motion for Preliminary Approval of Class Settlement (Doc. 57), and are not repeated

here.

## ARGUMENT

### I.    Final Approval of the Settlement Agreement Is Appropriate.

Because this is a class action, and because it involves FLSA claims, the Court must

approve the settlement. The procedure for approval includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a
      written motion for preliminary approval, including preliminary approval of any
      agreed settlement classes;

2.    Dissemination of mailed and/or published notice of settlement to all affected class
      members; and

3.    A final settlement approval hearing at which class members may be heard
      regarding the settlement, and at which argument concerning the fairness,
      adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*"), §§ 11.22, *et seq*. (4th ed. 2002). This process safeguards class members'

procedural due process rights and enables the Court to fulfill its role as the guardian of class

interests.

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

9

settlements, particularly in the class action context") (internal quotations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v.Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Under Fed. R. Civ. P. 23(e), to grant final approval of a settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable, and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 Civ. 8141 (DAB), 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140,

10

1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655 at \*2, *citing In re Top Tankers, Inc. Sec. Litig.*, 06 Civ. 13761 (CM), 2008 WL 2944620, at \*3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Massiah*, 2012 WL 5874655 at \*2 (citations omitted).

The record before this court reveals that the parties reached this settlement only after exchanging essential class-wide information, which allowed each side to assess the potential risks of continued litigation, and robust settlement negotiations, including two (2) mediation sessions under the direction of experienced class action mediator, Martin F. Scheinman, Esq.. *(See* Doc. 57). In other words, the settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful informal discovery.

**II.    The Settlement is Fair, Reasonable, and Adequate.**

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). The Grinnell factors are (1) the complexity, expense and likely duration of the litigation; (2) the

11

reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Grinnell, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," Massiah, 2012 WL 587655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

**A.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement before dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with more than fifteen hundred (1,500) Class Members. (Pelton Decl. ¶ 4)

Although the parties have already undertaken considerable time and expense in litigating this matter (*id.* at ¶¶ 13-14), further litigation without settlement would necessarily result in additional expense and delay. Extensive additional discovery would be required to establish liability and damages. A complicated trial would be necessary, featuring lengthy testimony by Defendants, Plaintiffs, and numerous class members, in addition to possible expert testimony.

Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial of the damages issues, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manger. Therefore, the first Grinnell factor weighs in favor of preliminary approval.

## B.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

As previously stated, the response to the notices has been overwhelmingly positive. No class members have opted out of the settlement. (Behring Decl. ¶ 10) Class Counsel received telephone calls from numerous Class Members and answered their questions about their claims and concerns about retaliation. Class Counsel were told by Class Members that they were pleased with the settlement. (Pelton Decl. ¶ 6) No Class Members have presented objections to the settlement. (Behring Decl. ¶ 11) "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class members submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

## C.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require hundreds more hours of discovery work for both sides, the parties have completed enough discovery to recommend

13

settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard. Class Counsel interviewed dozens of current and former employees of Dishes to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed comprehensive spreadsheets of employment data for all of Defendants' hourly employees across all four (4) Dishes locations. (Pelton Decl. ¶ 13). Plaintiffs also reviewed hundreds of pages of hard-copy documents from the Named Plaintiffs and other current and former employees including, but not limited to, time and payroll records, employee personnel files, e-mail correspondence, and employee lists. (*Id.*)

## D. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and NYLL, and in light of the defenses available to Defendants, which would pose substantial risk as to both liability and damages.

To prove liability, Plaintiffs would have to defeat Defendants' arguments that the Plaintiffs were paid overtime on a weekly basis as set forth in their payroll records. Furthermore,

14

Plaintiffs would have to establish that the class and collective actions should remain certified for trial.

While Plaintiffs believe that they could ultimately establish Defendants' liability on these claims, to do so would require significant factual development. While Plaintiffs believe that their claims are meritorious, their counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. *See Massiah*, 2012 WL 5874655, at *4 ("Litigation inherently involves risks.") The proposed settlement alleviates this uncertainty. This factor weighs heavily in favor of preliminary approval. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

## E. Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of maintaining the class status through trial is also present. Although the Court granted Plaintiffs' Rule 23 class certification, if the case proceeded towards summary judgment and trial, Defendants would likely move to de-certify the class action. Specifically, Defendants would argue that there are individualized questions as to the job duties and payment structure for the class members that makes a trial on a class-wide basis impractical. While this court is not likely to grant such a motion, based on what I know now about this case, it cannot be said that there is no risk of decertification; at the very least this factor does not augur against approval.

## F. Defendants' Ability to Withstand a Greater Judgment is Not at Issue (*Grinnell* Factor 7).

The parties negotiated heavily over the settlement amount taking into account Defendants' ability to pay a settlement that would compensate the class for their alleged unpaid wages and allow Defendants to remain in business. Even if the Defendants can withstand a

15

greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder this Court from granting preliminary approval.

## G. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

Plaintiffs' counsel has determined that this case presents significant risks that militate toward substantial compromise. Defendants have agreed to settle this case for a substantial amount, $1.1625 million. (*See* Ex. A at ¶ 3.1). The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial, survived an appeal, and were able to collect any judgment obtained.

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "Moreover, when a 'settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing "speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor." *Massiah*, 2012 WL 5874655, at *5.

Here, each Class Member will receive payment based upon his or her number of overtime hours worked and, if the Class Member worked for Dishes as a delivery employee, that Class Member will receive an addition payment based on the number of weeks worked as a delivery employee. (*See* Ex. A at ¶ 3.4). As explained in detail above, the amount that each class member

16

will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Accordingly, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant its final approval.

## III. Service Awards Are Appropriate in This Case.

The Named Plaintiffs also seek service awards for their work and willingness to represent the class. No Class Member has objected to the Service Awards. (Behring Decl. ¶ 11) The Service Awards are consistent with payments made to named plaintiffs and discovery representatives in this Circuit, other jurisdictions, and in other wage and hour cases. The service award is intended to compensate the Named Plaintiffs for their willingness to serve the Class, the service they rendered, risks they bore, and opportunities sacrificed to ensure a favorable class settlement. Thus, the Court should find that the Service Award is reasonable.

In light of the Named Plaintiffs' efforts resulting in a substantial settlement on behalf of the settlement class, the Named Plaintiffs are entitled to a Service Award, to be distributed from the Settlement Fund. In a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate, . *Massiah*, 2012 WL 5874655, at *8, *citing Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6,

17

2012) (approving service awards of $10,000 and $5,000); *Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548 RLE, 2012 WL 1320124, at *14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); *Willix,* 2011 WL 754862, at *7 (approving service awards of $30,000, $15,000, and $7,500; *Torres v. Gristede's Operating Corp.*, 04-CV-3316 PAC, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

The incentive payments are also within the range granted in other wage-and-hour cases throughout the country. *See*, e.g., *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, No. 06-3202, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour case); *Murillo v. Pacific Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728, *12 (E.D. Cal. July 21, 2010) ($10,000 enhancement payment for class action under California law and the FLSA); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 678 (S.D. Iowa 2009) ($10,000 incentive award to named plaintiffs for class action under FLSA and various state wage and hour laws); *Bredbenner v.*

18

*Liberty Travel, Inc.*, CIV.A. 09-905 MF, 2011 WL 1344745, at *24 (D.N.J. Apr. 8, 2011) ($10,000 service payment to named plaintiffs for class action under FLSA and various state wage and hour laws).

Here, the Named Plaintiffs performed substantial services and bore substantial risks for the class. Their services began with bringing the case that was eventually resolved in the settlement for more than 1,500 current and former hourly employees to recover unpaid overtime, spread of hours, and, for delivery employees, gratuities. (Pelton Decl. ¶ 12) Notwithstanding representations about the role Named Plaintiffs played in drafting of the complaint, providing numerous documents, working with Class Counsel to develop the case, and participating in the settlement negotiations including a two (2) mediation sessions, I am confident that all of the above was the work of counsel. However, Named Plaintiffs also assumed substantial professional risks and burdens in bringing the litigation. (*Id.* at ¶ 11). In addition, by signing the Settlement Agreement, the Named Plaintiffs executed a broader release than other Class Members. (*Id.* at ¶ 12) Thus, Service Awards to the Named Plaintiffs are appropriate.

## IV.    Class Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Fund.

Class Counsel seek an award of attorneys' fees and reimbursement of expenses in the amount of one-third (33.33%) of the Settlement Fund after subtracting litigation expenses, or $386,380.25. A summary of Class Counsel's fees are attached as Exhibit B to the Pelton Declaration. During the past 24 months of litigation and settlement negotiations, Class Counsel's efforts have been without compensation (*id.* at ¶ 20), and their entitlement to be paid has been wholly contingent upon achieving a good result.

## A. The Terms in the Named Plaintiffs' Retainer, the Settlement Agreement, and the Class Settlement Notices Entitle Class Counsel to One-Third of the Settlement Fund.

The Named Plaintiffs and Opt-In Plaintiffs agreed to Class Counsel's fee of up to one-third of the common fund plus reimbursement for costs. (Pelton Decl. ¶ 21) The Named Plaintiffs specifically agreed in their individually negotiated retainer agreement, that Class Counsel would recover up to one-third of the gross settlement, or counsel's hourly rate, whichever was greater, plus litigation and settlement administration costs, if any. (*Id.*) The Opt-In Plaintiffs also agreed in their consent to sue forms to Class Counsel's fees of up to one-third of the settlement. (*Id.*) The Court preliminarily approved the Settlement Agreement in this case that was agreed to by the Named Plaintiffs on behalf of the class and the Defendants. (*See* Doc. 27.)

Moreover, the Settlement Agreement provides that "Class Counsel shall petition the Court for an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Amount after reimbursement for litigation costs . . ." (*See* Ex. A at ¶ 3.3) The Court-approved Notice that was mailed to all Class Members stated: "Class Counsel will ask the Court to approve payment of up to one-third (33.33%) of the settlement amount to them for attorneys' fees, plus their costs." (Doc. 56-3 (Class Notice).) In accordance with the numerous agreed upon provisions, an award of $386,380.25 in attorneys' fees and costs, which is one-third (33.33%) of the Settlement Fund after subtracting expenses, is appropriate.

## B. The Percentage of the Fund Method of Awarding Attorneys' Fees Is Appropriate in Common Fund Cases.

In common fund situations, the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000); *citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)

20

(citing cases). The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost. *Id. citing Boeing*, 444 U.S. at 478; *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 392, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970)).

What constitutes a reasonable fee is properly committed to the sound discretion of the district court, *see Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir.1998), and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding. *Goldberger*, 209 F.3d at 47. In 1984, in *Blum v. Stenson,* the Supreme Court observed that "under the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n. 16 (1984). The Second Circuit has accordingly recognized that *Blum* indicates that the percentage-of-the-fund method is a viable method for awarding reasonable attorneys' fees. *Goldberger*, 209 F.3d at 49 *citing Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Moreover, the trend in this Circuit is toward the percentage method, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *citing Visa Check III*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003), which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *Id.*, *citing In re Lloyd's Am. Trust Fund Litig.*, 96 Civ.1262 RWS, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002).

The percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases. *Savoie*, 166 F.3d at 460-61, *citing* Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 254–59 (1985). It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method. *Id.* at 461. For the same reason, the percentage-of-the-fund method also

removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet. *Id.* Finally, the lodestar method is time-consuming and burdensome on the courts. *See In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993).

## C. An Award of One-third of the Settlement Fund as Attorneys' Fees and Costs Is Reasonable.

District Courts are guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50, *citing In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989). Here, all of the Goldberger factors weigh in favor of awarding Class Counsel their requested fees.

### 1. Class Counsel has expended significant time and effort on this case.

Before the initiation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. (Pelton Decl. ¶ 13) Class Counsel focused their investigation and legal research on the underlying merits of the Named Plaintiffs' and Class Members' claims, the damages to which they were entitled, and the propriety of class and collective action certification. Class Counsel spoke with potential Class Members to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other relevant information. Class Counsel also obtained and reviewed numerous documents from the Named Plaintiffs related to their employment with Defendants, including pay records, time records, and other related documents. (*Id.* at ¶ 14) Defendants also produced to Class Counsel comprehensive spreadsheets detailing among other things, the wage

22

rate, dates of employment, and overtime hours recorded for all of the putative Class Members.
(*Id.*) It is clear from the amount of pre-litigation research and work, and the extensive settlement
negotiations, including a full-day mediation, that Plaintiffs' Counsel expended substantial time
and labor on this case over the past two (2) years. Accordingly, this factor weighs in favor of
awarding Class Counsel's requested fees.

### 2. The large and complex nature of this litigation warrant the award of attorneys' fees being requested.

While hybrid FLSA and state wage-and-hour cases are often large and complex, *see*
*Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("courts
have recognized that FLSA cases are complex and that "[a]mong FLSA cases, the most complex
type is the 'hybrid' action brought here, where state wage and hour violations are brought as an
'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective
action. . . "), this one was no different, consisting of a multi-location FLSA collective action and
NYLL state class action, covering more than 1,500 individuals. The size and difficulty of the
issue in a case are significant factors to be considered in making a fee award. *Beckman v.
KeyBank, N.A.*, 85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013); *see also Jemine v. Dennis*, 901 F.
Supp. 2d 365, 392 (E.D.N.Y. 2012) ("in a class action suit, as here, the large number of plaintiffs
increase the complexity of the litigation"). Thus, this factor favors awarding Class Counsel the
requested fees.

### 3. Class Counsel took on a large amount of risk in prosecuting this case.

Class Counsel took on substantial risk in prosecuting this action. As was discussed in
Section II.D. *supra*, this case involves complex factual and legal issues as to both liability and
damages. The Named Plaintiffs and the Class were far from guaranteed to prevail on all of these
issues. Further, as Plaintiffs' Counsel prosecuted this case on a contingency basis, advancing

23

both fees and costs, counsel took on the risk that they would not ultimately recover anything for their time and effort. "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Febus, LLC*, 870 F. Supp. 2d at 340.

Furthermore, in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), Class Counsel faced some risk associated with class certification under Rule 23. Since *Wal-Mart*, some of my colleagues appear to have denied Rule 23 motions in misclassification cases. *See Shayler v. Midtown Investigations. Ltd.*, No. 12 Civ. 4685, 2013 U.S. Dist. LEXIS 29540, 2013 WL 772818 (S.D.N.Y. Feb. 27, 2013) (denying motion to certify class of security guards allegedly misclassified as independent contractors); *Trawinski v. KPMG LLP*, No. 11 Civ. 2978, 2012 U.S. Dist. LEXIS 183366, 2012 WL 6758059, at *6 (S.D.N.Y. Dec. 21, 2012) (denying motion to certify class of transaction associates allegedly misclassified as exempt administrators); *Romero v. HB. Auto Grp., Inc.*, No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) (denying motion to certify class of auto dealership employees in misclassification case); *White v. Western Beef Props., Inc.*, No. 07 Civ. 2354, 2011 U.S. Dist. LEXIS 141696, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) (adopting report and recommendation to deny motion to certify class of department managers and assistant department managers allegedly misclassified under executive exemption).

Accordingly, the award of fees is appropriate in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success. *See Willix*, 2011 WL 754862, at *7.

### 4. Class Counsel's representation has been of the highest quality.

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Guzman v.*

*Joesons Auto Parts*, CV 11-4543 ETB, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. *Id.* (citations omitted).

As discussed in Section II, Class Counsel has achieved a fair, reasonable, and adequate recovery for Plaintiffs. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable. Furthermore, although the parties did not have to heavily litigate this action prior to reaching a resolution; Class Counsel has significant experience prosecuting large-scale wage and hour actions including misclassification cases such as this one. Consequently, Class Counsel should be awarded the requested fees.

### 5. The requested fees are reasonable in relation to the settlement.

Class Counsel's attorneys' fees request of one-third (33.33%) is in line with decisions in this Circuit which have routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases. *See, e.g., Toure v. Amerigroup Corp.*, 10 CIV. 5391(RLM), 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) (33%); *Willix,* 2011 WL 754862, at *6 (33%); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL 3322580, *8 (S.D. N.Y. Aug. 23, 2010) (awarding class counsel one-third of settlement fund); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, *8 (S.D. N.Y. May 11, 2010) (one-third).

Similarly, Class Counsel's attorneys' fees request is in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements. *See, e.g., Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, No. 11 Civ. 592–wmc, 2013 WL 5745102, *1 (W.D. Wis. Oct. 23, 2013) (awarding class counsel 1/3 of the settlement fund for Hybrid FLSA

and Rule 23 Class Action wage and hour case); *Adeva v. Intertek USA Inc., et al.*, No. 09 Civ. 01096-SRC-MAS, Dkt. 228, pp. 1, 7 (D. N.J. Dec. 22, 2010) (awarding class 34% of the class settlement fund in a wage-and-hour case); *Rotuna v. West Customer Mgmt. Group, LLC*, 4:09 Civ. 1608, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) (one-third); *Kidrick v. ABC Television Appliance Rental*, No. 97-69, 1999 WL 1027050, *4 (N.D. W.Va. May 12, 1999) (one-third).

Class Counsel's requested fees of one-third (33.33%) of the Settlement Fund are therefore "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754865, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action). Accordingly, this factor weighs in favor of approval of the requested fees.

### 6. Public policy weighs in favor of awarding attorneys' fees.

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Willix*, 2011 WL 754862, at *6 (citation omitted). Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Id. citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id.* If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id., citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage and hour laws]. *Id.*

Based upon the negotiated fee agreement in this case, the typical percentage of compensation in similar cases in this Circuit and nationwide, and the *Goldberger* factors, Class

26

Counsel is entitled to a reasonable attorneys' fees award of one-third (33.33%) of the Settlement Fund.

## D. The Lodestar "Cross Check" Further Supports an Award to Class Counsel of One-third of the Settlement Fund.

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Goldberger*, 209 F3d at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at **78-79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702, at *19-22 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).

27

Here, the lodestar sought by Class Counsel, approximately 1.9 times, falls within the range granted by courts and equals to the 33.33% being sought. (*See* Ex. B (Summary of Attorneys' Time Records).) In fact, the multiplier is at the lower end of the range routinely granted by courts (as set forth above). Class Counsel's hours are reasonable for the 24 months of contested litigation that it took to resolve this class action. *Cf. Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

In addition to the time already spent in bringing this action, Class Counsel anticipates that it will have to perform work after the final approval hearing, including answering class member questions, answering questions from the Settlement Administrator, and ensuring that the Settlement Fund has been administered and monitored in accordance with the parties' agreement. This additional time also supports Class Counsel's fee request. *See Sewel*, 2012 WL 1320124, at *13.

**E.     Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs.**

It is well-settled in this Circuit that "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). *See also Kuzma v. Internal RevenueService*, 821 F.2d 930, 933-34 (2d Cir.1987) ("Identifiable out-of-pocket disbursements

for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from non-recoverable routine office overhead, which must be absorbed within the attorney's hourly rate."). Here, Class Counsel's fees incurred in prosecuting this action are $3,359.24, and include filing fees, deposition fees, and mailing costs, which were necessary to the prosecution of this action. Because such costs are reasonable and were incidental and necessary to the representation of the class, the Court should award Class Counsel reimbursement of their litigation costs as part of their requested fees.

## V. The Settlement Administrator's Fees Are Approved.

Simpluris, Inc., a third-party settlement administrator, was retained to administer the settlement. The Settlement Administrator's fees are estimated to be $34,000.00, including fees incurred and anticipated future costs for completion of the administration. (Behring Decl. ¶ 14.) Class Counsel paid Simpluris' up-front administration costs in the amount of $7,985.74. (*Id.*) Accordingly, Plaintiffs respectfully request that the Court approve payment of the Settlement Administrator's fees in the amount of $34,000.00 subject to Class Counsel's review of the Settlement Administrator's invoices. Class Counsel should be reimbursed for the $7,985.74 that they paid to Simpluris for up-front administration costs, and the remainder of the $34,000 in Settlement Administration costs should be paid to Simpluris.

## CONCLUSION

For the foregoing reasons, the Court (1) grants final approval of the Settlement Agreement; (2) approves the service payments to the Named Plaintiffs; (3) approves an award of attorneys' fees in the amount of $386,380.25 (33.33% of the Settlement Fund after subtracting expenses) and reimbursement of litigation expenses in the amount of $3,359.24, plus reimbursement of actual settlement administration fees paid by Class Counsel in the amount of $7,985.74; (4) approves payment of settlement administration costs not paid by Class Counsel of $26,014.26 to the Settlement Administrator from the Settlement Fund; and (5) enters judgment dismissing the federal action with prejudice in accordance with the Settlement Agreement.

The Clerk of the Court is directed to remove Docket No. 67 from the Court's list of pending motions and to close the file.

Dated: May 23, 2014

_____
U.S.D.J.

BY ECF TO ALL COUNSEL